# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HASIM PALE,<br><br>Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Respondent. | No. 17 C 4367<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Hasim Pale ("Claimant") seeks review of the final decision of Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.] The parties have filed cross-motions for summary judgment [ECF Nos. 13 and 22] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion [ECF No. 22] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# I. PROCEDURAL HISTORY

Claimant filed his claim for DIB on October 4, 2013, alleging disability beginning September 3, 2013. (R. 19.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On February 1, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Bill Laskaris. (R. 33–66.) The ALJ also heard testimony from vocational expert ("VE") James Radke and Claimant's daughter, Amira Pale. (*Id.*) An interpreter translated the hearing in Bosnian by telephone. (R. 19.)

On February 29, 2016, the ALJ denied Claimant's claim for DIB, based on a finding that he was not disabled under the Act. (R. 19–28.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since September 3, 2013, the alleged onset date. (R. 21.) At step two, the ALJ found that Claimant had the severe impairments of posttraumatic stress disorder ("PTSD"), anxiety disorder, and depression. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (*Id.*) The ALJ then assessed Claimant's residual functional capacity ("RFC")[3] and concluded that Claimant had the residual

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Never climb ladders, ropes or scaffolds, avoid all use or exposure to moving machinery and unprotected heights. The work is limited to simple routine repetitive tasks; performed in a work environment free of fast paced production requirements, involving only simple, work related decisions and with few, if any, workplace changes; only brief and superficial interaction with the public, coworkers, and supervisors.

(R. 23.) At step four, the ALJ determined that Claimant was unable to perform any past relevant work. (R. 26.) Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform, such as dishwasher, janitor, or dining room attendant. (R. 27.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 28.) The Appeals Council declined to review the matter on April 7, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant alleges a number of errors. Among other things, Claimant contends that the ALJ erred in evaluating the opinions of Claimant's treating physicians and improperly assessed Claimant's subjective allegations and credibility. Although Claimant raises other alleged errors in the ALJ's opinion, it is unnecessary to address them because these issues are dispositive of Claimant's appeal.

**A.     The Medical Opinion Evidence**

Claimant first argues that the ALJ failed to accord proper weight to the opinions of his treating psychiatrist, Dr. Dees, and his treating physician, Dr. Seferovic.[4] [ECF No. 14, at 13–14.]

---

[4] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (*Id.*)

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's

5

opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

### 1. *Dr. Dees*

On January 5, 2016, Dr. Dees completed a mental RFC assessment in which she opined that Claimant's performance was precluded for 15% or more of an eight-hour workday in all areas of mental abilities in understanding and memory, sustained concentration and memory, social interaction and adaptation. (R. 400–03.) She indicated that Claimant was depressed, felt worthless, had a poor appetite, poor sleep, heard auditory voices, and was anxious and paranoid. (*Id*. at 402.) Dr. Dees opined that Claimant would be off task 10% of an eight-hour workday and unable to work in a competitive work environment for eight hours per day, five days per week. (*Id*. at 402–03.) In addition, Claimant would miss more than six days of work per month and his prognosis was noted as "guarded." (*Id.* at 400, 402.)

The ALJ afforded "little weight" to Dr. Dees's mental RFC assessment because it was "inconsistent with her documentation of the claimant's progress while receiving psychiatric treatment." (R. 26.) Specifically, the ALJ stated that Dr. Dees consistently rated Claimant's GAF at 65 and noted his depression was "mild." (*Id*.) The Court finds that the ALJ improperly discounted Dr. Dees's opinions.

From his discussion of the medical evidence, it is evident that the ALJ here committed the same error the Seventh Circuit has so frequently warned against: he "focused solely on the reports of stability and ignored the many complaints of persisting symptoms." *Roth v. Colvin*, 2016 WL 890750, at *9 (N.D. Ill. March 9, 2016) (citing *Campbell*, 627 F.3d at 306). The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham v. Colvin*, 765 F. 3d 685, 697 (7th Cir 2014). Particularly in mental

illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott,* 647 F.3d at 740; *see also Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("This cherry-picking is especially problematic where mental health is at issue, for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about his overall condition.") (internal citations and quotations omitted).

The ALJ noted that "documentation shows progressive psychological improvement with medication adjustment." (R. 24.) But in arriving at this conclusion, the ALJ seized upon the few positive notations in Dr. Dees's records, and ignored or discounted the many notes supportive of Dr. Dees's opinions. Although Dr. Dees did note on a few occasions that Claimant's mood was improved with medication and he was "doing well" on Abilify (R. 326, 327, 408, 413), she also consistently noted Claimant's chronic sad and depressed mood, and Claimant's continued complaints of anxiety, insomnia, stress, poor concentration, and nightmares. (*See, e.g.*, R. 326–30, 405–07, 413–20). The ALJ further failed to appreciate the significance of Dr. Dees's notations regarding Claimant's chronic dysthymia. Dysthymia (depression) is a condition that may "significantly interfere" with work and relationships.[5] By failing to address the evidence in Dr. Dees's treatment notes supportive of a disability finding, the Court cannot determine whether the ALJ considered this evidence in making his determination.

Furthermore, there can be a big difference between "a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. "Improvement" by itself does not demonstrate a lack of disabling symptoms. *See Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) ("The ALJ's reliance on the stated 60% improvement is

---

[5] *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (citing *Persistent depressive disorder (dysthymia)*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590)).

meaningless because she failed to establish a baseline from which the stated improvement can be measured . . . It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition."). In order to reject Dr. Dees's opinion based on Claimant's response to treatment, "the ALJ must connect how his improvement restored [Claimant's] ability to work." *Johnson v. Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D. Ill. Jan. 19, 2017); *see also Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott*, 647 F.3d at 740. Here, the ALJ never took the additional step necessary to explain why Claimant's "progress while receiving psychiatric treatment" undermined the credibility of Dr. Dees's opinions.

Even assuming the ALJ provided "good reasons" for not affording Dr. Dees's opinion controlling weight, he was still required to address the factors set forth in 20 C.F.R § 404.1527 to determine what weight to give the opinion. *See* SSR 96-2p, at *4.[6] SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R § 404.1527." *Id.*; 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ afforded Dr. Dees's opinion only "little weight," but failed to adequately address or otherwise demonstrate consideration of many of the other enumerated factors.

Multiple factors favor crediting Dr. Dees's opinions and "[p]roper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Dees's] opinions." *See Campbell*, 627 F.3d at 308. The ALJ's failure to "sufficiently account [ ] for the factors in 20

---

[6] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents this Court from assessing the reasonableness of the ALJ's decision. For these reasons, the Court concludes the ALJ did not offer substantial evidence for rejecting Dr. Dees's opinions, which is an error requiring remand.

### 2. Dr. Seferovic

On January 22, 2016, Dr. Seferovic completed a physical RFC assessment. (R. 423–26.) She indicated that exertional and nonexertional limitations were not applicable. (R. 424–26.) With respect to Claimant's mental limitations, Dr. Seferovic opined that Claimant experienced stress severe enough to interfere with attention and concentration 100% of the time, that Claimant would be off task more than 30% of the time, and that he would be absent from work five days or more a month. (R. 423, 426.) Dr. Seferovic noted Claimant's medications caused him to be drowsy, dizzy, and unable to concentrate, and his depression and anxiety contributed to the severity of Claimant's symptoms and functional limitations. (R. 423.) According to Dr. Seferovic, Claimant could be expected to perform a job less than 50% of the workday and would be unable to obtain and retain work in a competitive work environment, eight hours per day, five days a week. (R. 426.) Dr. Seferovic further described Claimant's prognosis as "fair to poor." (R. 423.)

The ALJ's only proffered reason for giving "little weight" to Dr. Seferovic's opinions regarding Claimant's mental limitations was that Dr. Seferovic "is not a specialist in the area of psychiatry." (R. 26.) Generally, an ALJ may discount the medical opinion of a treating provider who is not a specialist relative to the opinion of a specialist discussing her area of specialty. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). While the ALJ references Dr. Seferovic's specialty, he failed to address

9

or otherwise demonstrate adequate consideration of the other regulatory factors, including the nature and extent of the treating relationship and the consistency of the opinion with the other evidence and opinions of record.

On remand, the ALJ should reevaluate the weight to be afforded to the opinions of Drs. Dees and Seferovic. If the ALJ finds "good reasons" for not giving the opinions controlling weight, *see Campbell*, 627 F.3d at 306, the ALJ must explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss*, 555 F.3d at 561, in determining what weight to give the opinion.

**B.      The Credibility Determination**

Claimant next contends that the ALJ erred in evaluating his subjective symptom statements and credibility. [ECF No. 14, at 11–13.] The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[7] Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek*

---

[7] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on February 29, 2016. (R. 28.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

*v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009).

In assessing Claimant's credibility, the ALJ invoked the oft-criticized boilerplate language that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely for the reasons explained in this decision." (R. 24.) The Seventh Circuit has cautioned that this phrase is "meaningless," because it fails to explain what the ALJ relied upon in making his determination. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). But the use of the boilerplate language does not automatically undermine an ALJ's credibility determination, if he also points to specific information in the record to support the assessment. *Id.* at 367–68.

In this case, however, after a careful reading of the ALJ's entire opinion, the Court is not confident that it knows what the ALJ's rationale was for his credibility determinations or how the ALJ reached them. While the ALJ summarized Claimant's testimony and the medical evidence, he offered nothing in the way of analysis. This prevents the Court from assessing the reasonableness of the ALJ's decision. *See Erwin v. Astrue*, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012) ("Summarizing medical evidence is no substitute for actual analysis of medical evidence."); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). Additionally, the ALJ's failure to address which of Claimant's statements (if any) he found credible, which statements he discounted, and why, is inconsistent with the applicable regulations and case law. *See, e.g.*, SSR 96-7p, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory

statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) ("the ALJ must explain [his] decision in such a way that allows us to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record.").

In sum, the Court concludes that without a sufficient explanation that connects the record evidence to the ALJ's conclusion, the basis for the ALJ's credibility determination is unclear and unreviewable. The Court does not mean to suggest that the ALJ's credibility determination ultimately is incorrect or patently wrong, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). On remand, the ALJ should re-evaluate Claimant's subjective symptom statements pursuant to SSR 16-3p, with due regard to the full range of medical evidence, sufficiently articulate how he evaluated that evidence, and then explain the logical bridge from the evidence to his conclusions.

## C. Other Issues

Because the Court is remanding only on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant should make no assumptions either. Rather, it is simply unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion [ECF No. 22] is denied. The decision of the

Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 23, 2018